# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| IN RE: APPRAISAL OF | : | **CONSOLIDATED** |
| JARDEN CORPORATION | : | **C.A. No. 12456-VCS** |
| | : | |

## ORDER

On this ___16th___ day of September, 2019, upon consideration of Petitioners'

Motion for Reargument (the "Motion") and the Respondent's Opposition to

Petitioner's Motion for Reargument (the "Response"), it appears that:

1.      On July 19, 2019, the Court issued its post-trial opinion in this appraisal

action (the "Opinion") in which the Court appraised the fair value of Jarden

Corporation at the time of its merger with Newell Rubbermaid, Inc. at $48.31 per

share.  I based that appraisal on Jarden's Unaffected Market Price (as defined in the

Opinion).[1]  I also determined that this fair value determination was corroborated by:

(i) other market evidence, including a pre-merger Jarden stock offering at $49.00

per share; (ii) my independent discounted cash flow ("DCF") analysis, which

yielded a value for Jarden of $48.13 per share; and (iii) to a lesser degree,

Respondent's merger-price-less-synergies analysis, which yielded a value of $46.21

per share.  These valuation measures stood in contrast to Petitioner's proffered fair

---

[1] *In re Appraisal of Jarden Corp.*, Consol. C.A. No. 12456 (Del. Ch. July 19, 2019) ("Op.").

value of $71.35 per share based on a comparable companies analysis, which I rejected as incredible for reasons stated in the Opinion.

2. In the Motion, Petitioner's argue that my DCF analysis does not corroborate my fair value determination because the DCF results were the product of certain structural and mathematical flaws. Specifically, Petitioners argue I miscalculated Jarden's unlevered free cash flows, miscalculated the weighted average cost of capital ("WACC"), miscalculated the terminal value and failed to make proper adjustments for certain tax shields and unfunded pension/postretirement liabilities. According to Petitioners, correcting for these errors results in a DCF value for Jarden of between $61.59 and $64.01 per share. And because this valuation is not corroborative of the Court's appraisal based on Jarden's Unaffected Market Price, Petitioners maintain that the Court must adjust its appraisal to reflect at least the range indicated by the corrected DCF analysis.

3. "A motion for reargument under Court of Chancery Rule 59(f) will be denied unless the court has overlooked a controlling decision or principle of law that would have controlling effect, or the court has misapprehended the law or the facts so that the outcome of the decision would be different."[2] In the appraisal context, this court has granted reargument in instances where the court has made

---

[2] *Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs.*, 2008 WL 2133417, at *1 (Del. Ch. May 21, 2008).

2

structural or mathematical errors in the course of performing its own DCF analysis.[3]

For reasons explained below, I agree with Petitioners that my DCF analysis must be corrected as the result of errors made in structuring the DCF model and calculating the value.[4] I disagree, however, that the corrected DCF yields a fair value in the range of $61.59 and $64.01 per share.

    4.     **Unlevered Free Cash Flows -** The calculation of free cash flows in the Opinion's DCF model does not add back depreciation or deduct Jarden's year-over-year increase in net working capital. Petitioner corrects this error by adding

---

[3] *See, e.g.*, *Doft & Co. v. Travelocity.com Inc.*, 2004 WL 1366994 (Del. Ch. June 10, 2004); *Henke v. Trilithic Inc.*, 2005 WL 3578094 (Del. Ch. Dec. 20, 2005); *DFC Global Corp. v. Muirfield Value P'rs, L.P.*, 172 A.3d 346 (Del. 2017).

[4] Ironically, in the Opinion, I cautioned that our courts should not wade "deep into the weeds of economics and corporate finance" without "the guidance of experts trained in these disciplines." Op. at 2. Yet that is precisely what I did when I endeavored to conduct my own DCF analysis upon concluding that the credible evidence did not support certain aspects of both of the competing experts' DCF valuations. While I stand by that factual determination, I did not adequately account for the fact that making adjustments to the experts' DCF models might require that other adjustments be made in order to stay true to the DCF methodology. I made other unforced errors as well. With the assistance of the parties, and their experts' supplemental affidavits, I have attempted to correct those errors here as best I can acknowledging fully that there must be a "better way to run a railroad." In view of the fact that the parties' experts could not agree on any of the significant inputs for the DCF analysis, I am more convinced than ever that the experts' inability to agree on inputs is evidence that DCF is not reliable here, particularly given the presence of a reliable "market-based metric." *In re Stillwater Mining Co.*, 2019 WL 3943851, at *61 (Del. Ch. Aug. 21, 2019). The better approach, therefore, would have been to leave it at that rather than "parse through the inputs and hazard semi-informed guesses about which expert's view was closer to the truth." *Id.* Having endeavored, instead, to work through the DCF on my own, I will see that process through to the bitter end by engaging in the revised DCF presented here.

3

depreciation and subtracting the increase in net working capital.  I agree that this adjustment is proper, and reflect the adjustment below:

**Unlevered Free Cash Flow Calculation**

|  | Calendar Year Ending December 31, | | | | | |
|---|---|---|---|---|---|---|
|  | **FY16P** | **FY17** | **FY18** | **FY19** | **FY20** | **FY21** |
| EBIT | $1,260.0 | $1,394.0 | $1,541.0 | $1,670.0 | $1,807.0 | - |
| Plus: Non-deductible Goodwill Amort. | 77.00 | 93.00 | 93.00 | 93.00 | 93.00 | - |
| EBITA | $1,337.0 | $1,487.0 | $1,634.0 | $1,763.0 | $1,900.0 | $1,958.9 |
| Less: Provision for Taxes | (468.0) | (520.5) | (571.9) | (617.1) | (665.0) | (685.6) |
| Unlevered Net Income/NOPAT | $869.1 | $966.6 | $1,062.1 | $1,146.0 | $1,235.0 | $1,273.3 |
| Plus: D&A (excl. non-deductible GW amc | 229.0 | 232.0 | 240.0 | 247.0 | 254.0 | - |
| Less: Capital Expenditures | (297.0) | (266.0) | (279.0) | (293.0) | (308.0) | - |
| Less: Increase in Net Working Capital | (50.0) | (49.0) | (53.0) | (56.0) | (59.0) | - |
| Unlevered Free Cash Flow | $751.1 | $883.6 | $970.1 | $1,044.0 | $1,122.0 | $731.8 |

5.      **Weighted Average Cost of Capital** - The Opinion's calculation of WACC incorrectly adjusted for tax twice, by making tax adjustments to the after-tax cost of debt.  Petitioner corrects for this error by omitting this second tax adjustment from the after-tax cost of debt.  I agree that this adjustment is appropriate, and reflect the adjustment below:

**WACC Calculation**

| Capital Structure | |
|---|---|
| Debt to Total Capitalization | 36.10% |
| Equity to Total Capitalization | 63.90% |
| **Debt / Equity** | **56.49%** |
| | |
| **Cost of Equity** | |
| Risk Free Rate | 2.14% |
| Equity Risk Premium | 6.03% |
| Size Premium | 0.57% |
| Levered Beta | 1.18 |
| **Cost of Equity** | **9.83%** |
| | |
| **Cost of Debt** | |
| Pre-Tax Cost of Debt | 4.31% |
| Tax Rate | 35.00% |
| **After Tax Cost of Debt** | **2.80%** |
| | |
| **WACC** | **7.29%** |

I calculate the cost of equity, as I did in the Opinion, by using the capital asset pricing model (CAPM), which defines the cost of equity as follows:

$$r_e = r_f + \beta \times (r_m - r_f) + Size\ Premium$$

Where:

$r_f$ = Risk-free rate (represented by 10-yr U.S. Treasury bond rate)

$\beta$ = Predicted equity beta (levered)

$(r_m - r_f)$ = Equity risk premium

I calculate the after-tax cost of debt by multiplying the pre-tax cost of debt (4.31%) by (1 - tax rate). To arrive at WACC, I multiply the cost of equity by the equity to total capitalization, multiply the after-tax cost of debt by the debt to total capitalization and add these two numbers together.

6.     **Terminal Value -** The terminal value equation cited in the Opinion conceptually intends to calculate the terminal value in perpetuity based on the year T+1 unlevered free cash flows, growing at the terminal growth rate and discounting WACC. Petitioner points out that the Opinion's DCF Model does not use Terminal FY21 NOPAT of $1,273 million in its formula to calculate the terminal value.

5

Instead, the Opinion's DCF Model uses Terminal FY21 *unlevered free cash flows* of $939 million.[5]  Petitioner corrects for this error as follows:

| all values in millions | Using the Corrected WACC of 7.29% |
|---|---|
| [A] Terminal FY21 NOPAT | $1,273 |
| [B]   + Terminal FY21 Depreciation | n/a |
| [C]   - Terminal FY21 Increase in Net Working Capital | n/a |
| [D]   - Terminal FY21 Capital Expenditures | n/a |
| [E] Terminal FY21 Unlevered Free Cash Flow | n/a |
| [F] Normalized Unlevered Free Cash Flow (NOPAT × (1 - 27.75% Terminal Investment Rate)) | $920 |
| [G]     / Capitalization Factor | 4.19% |
| [H] Terminal Value | $21,956 |
| *Memo:* | |
| [I] Terminal FY21 NOPAT | $1,273 |
| [J]   - Normalized Unlevered Free Cash Flow | -920 |
| [K] Net Investment | $353 |
| *% of NOPAT* | *27.75%* |

  [A] FY20 NOPAT x 3.1% TGR; Opinion, pp. 110, 141; Exhibit 1
  [B] Panel A: Opinion, p. 141; Exhibit 1, Panel B: n/a
  [C] Panel A: Opinion, p. 141; Exhibit 1, Panel B: n/a
  [D] Panel A: FY21 Revenue x (average (Capital Expenditures / Revenue) for FY 16–FY20);
       Opinion, pp. 136, 141; Exhibit 1; Panel B: n/a
  [E] Panel A: [A] + [B] - [C] - [D]; Opinion, p. 141; Exhibit 1; Panel B: n/a
  [F] Panel A: [E] x (1 - 27.75% Terminal Investment Rate); Opinion, p. 141; Panel B: [A] x
       (1 - 27.75% Terminal Investment Rate) (see Opinion, pp. 115, 135–136, citing JX 1816 at
       ¶ 95; JX 2515, Damodaran, *Investment Valuation* at 313)
  [G] WACC - TGR = 6.94% - 3.10% if using the Court's WACC and 7.29% - 3.10% if using the
       corrected WACC (see Opinion, pp. 110, 135; Exhibit 3)
  [H] [F] / [G]
  [I]  Row [A]
  [J]  Row [F]
  [K] [I] - [J]

---

[5] Op. at 141 (the Opinion's DCF Exhibit used FY20 NOPAT of $1,235 million × (1 + Terminal Growth Rate of 3.1%).

Petitioner then uses the Opinion's 27.75% Terminal Investment Rate (TIR), Terminal FY21 NOPAT and the capitalization factor to arrive at the final Terminal Value. The Opinion derived the 27.75% TIR by averaging Dr. Hubbard's 33.9% terminal investment rate (from the McKinsey formula for TIR[6]) and Jarden's 21.6% historical five-year average.[7] As explained in the Opinion, I took the average of Dr. Hubbard's investment rate and Jarden's historical five-year average because I found that Dr. Hubbard had inexplicably included six years in his TIR, while the terminal growth rate included only five.[8] "By including the sixth year [the 2010 investment rate of 64.3%] in his calculation, Dr. Hubbard was able to reach a significantly higher number for Jarden's historical average growth."[9]

I agree with Respondent that maintaining 27.75% as the TIR in this revised DCF valuation does not make sense for two reasons. First, as the Opinion notes and endorses, "the return on new invested capital should equal the company's WACC"[10] and, as explained above, WACC (as amended here) is 7.29%. The Opinion's TIR improperly departs from this principle. Second, I no longer see a basis to account or

---

[6] TIR = g/RONIC.

[7] Op. at 110–12.

[8] Op. at 114.

[9] Op. at 114.

[10] Op. at 113 (citing Trial Tr. 1046:11–1049:23 (Hubbard); JX 2516; JX 2515).

adjust for the unjustified sixth year of comparable growth as proffered by Dr. Hubbard.[11] This allows a straightforward application of the McKinsey formula, as endorsed in the Opinion, to arrive at TIR given the corrected WACC and the terminal growth rate.[12]

Respondent has presented in the Response the following calculation for determining the terminal value, adjusted for revised RONIC:

| ($ Millions, except per share) | Assumed RONIC | | Notes |
| | 11.17% | 7.29% | |
| --- | --- | --- | --- |
| [1] FY21 NOPAT | $1,273 | $1,273 | Opinion at 141. |
| [2] FY21 Unlevered FCF | $920 | $732 | = [1] × (1 - 3.10% growth / RONIC). |
| [3] Terminal Value | $21,951 | $17,464 | = [2] / (7.29% WACC - 3.10% growth rate). |

While I agree with the methodology employed in this calculation, I note that my math yields $17,462, not $17,464. In any event, I rely on the terminal value ($17,465) calculated in the revised DCF (below) since it is the product of the unrounded numbers with which the parties now otherwise agree, except for the TIR. To be clear, I adjust the terminal value calculation in order for RONIC to equal WACC under the McKinsey formula, by multiplying one minus the revised terminal investment rate (3.1%/7.3%) by the FY21 net operating profits after tax (or NOPAT)

---

[11] In this regard, Respondent makes a valid point that the Court did not cite to finance literature or the record in reaching its "blended TIR." Response at 11.

[12] *See* Trial Tr. 1064:24–1065:6 (Hubbard); JX 2516 at 249–50; JX 2515 at 291; JX 1816 ¶ 94; Aff. Prof. Hubbard ¶ 7 (Aug. 2, 2019).

8

(a value of $1,273.3). I then divide the resulting product ($731.8—the FY21 unlevered FCF) by the capitalization factor (7.29% - 3.1% = 4.19%) to reach the terminal value of $17,465.

7. **Enterprise Value -** The Opinion's DCF model treated FY16 as a full year, and thus includes all of the FY16 unlevered free cash flows in its calculation. The problem, as Petitioner correctly notes, is that the merger closed in the first quarter of FY16 so the calculation of FY16 free cash flows should be adjusted to reflect the partial year.

Dr. Zmijewski adjusted for the partial FY16 by multiplying the full year FY16 forecasted unlevered free cash flows by the portion of the year that remained after the merger.[13] Dr. Hubbard adjusted for the partial FY16 by calculating partial year FY16 unlevered free cash flows as equal to the full year FY16 forecasted unlevered free cash flows minus the actual first quarter FY16 reported unlevered free cash flows.[14] I adopt Dr. Zmijewski's approach for the FY16 partial year adjustment because, in my view, it more accurately accounts for the fact that the merger date (April 15, 2016) was in the first few days of the second quarter of FY16.

---

[13] JX 1818, Ex. VI-7A.

[14] JX 1816, Ex. 16.

8. **Convertible Debt -** The Opinion's DCF model mistakenly adopted Dr. Hubbard's adjustment of $1.71 billion for convertible debt. Convertible debt is dependent on pre-tax cost of debt and the value of equity. Because the Opinion changed Dr. Hubbard's pre-tax cost of debt and made other changes that affect equity value, the value of convertible debt must also change. Dr. Hubbard updated the convertible debt valuation from my DCF model to reflect the revised cost of debt (4.31% pre-tax) and the revised enterprise value that follows from the other corrections. Convertible debt, as the parties acknowledge, is derived from valuing both the debt component and the warrant component of the convertible notes. Dr. Hubbard employs an option-pricing model to arrive at the value of both components. In doing so, it appears Dr. Hubbard used the share price he derived by using the rounded terminal value that, as explained above, is not consistent with my understanding of the proper application of the relevant formula. Nevertheless, I will not disturb Dr. Hubbard's calculated value for convertible debt. Not only do Petitioners use Dr. Hubbard's method of valuing convertible debt in in their revised DCF, Dr. Hubbard has represented that he made the appropriate adjustments based on the revised enterprise value and cost of debt and I have no basis to question that representation.

9. **Amortization -** The Opinion's DCF Model does not include any value from tax savings that Jarden expected to receive from the amortization of intangible

10

assets. Both experts included in their DCF models the value of tax shields that Jarden expected to receive from the amortization of intangible assets. And both experts valued these amortization tax shields using a discounted cash flow model.[15]

I adopt Dr. Hubbard's amortization tax shield since he uses the amortization values found in the Proxy, but I apply the corrected 7.29% WACC and 35% tax rate, which yields a value of $110.2 million.

**Exhibit 5B**

**Hubbard Valuation of the Amortization Tax Shield**

|  | FY16 | FY17 | FY18 | FY19 | FY20 | FY21 | FY22 | FY23 | FY24 | FY25 | FY26 | FY27 | FY28 | FY29 | FY30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | [A] | [B] | [C] | [D] | [E] | [F] | [G] | [H] | [I] | [J] | [K] | [L] | [M] | [N] | [O] |
| Total Amortization | $77.0 | $93.0 | $93.0 | $93.0 | $93.0 | $110.4 | $110.4 | $110.4 | $110.4 | $110.4 | $110.4 | $110.4 | $110.4 | $110.4 | $110.4 |
| Tax-Deductible Portion | $25.5 | $30.8 | $30.8 | $30.8 | $30.8 | $36.5 | $36.5 | $36.5 | $36.5 | $36.5 | $36.5 | $36.5 | $36.5 | $36.5 | $36.5 |
| Annual Tax Shield | $8.9 | $10.8 | $10.8 | $10.8 | $10.8 | $12.8 | $12.8 | $12.8 | $12.8 | $12.8 | $12.8 | $12.8 | $12.8 | $12.8 | $12.8 |
| Time Period | 0.36 | 1.21 | 2.22 | 3.22 | 4.22 | 5.22 | 6.22 | 7.22 | 8.22 | 9.22 | 10.22 | 11.22 | 12.22 | 13.22 | 14.22 |
| Discount Factor | 0.97 | 0.92 | 0.86 | 0.80 | 0.74 | 0.69 | 0.65 | 0.60 | 0.56 | 0.52 | 0.49 | 0.45 | 0.42 | 0.39 | 0.37 |
| Tax Shield Present Value | $8.7 | $9.9 | $9.2 | $8.6 | $8.0 | $8.9 | $8.3 | $7.7 | $7.2 | $6.7 | $6.2 | $5.8 | $5.4 | $5.0 | $4.7 |
| Total Present Value | $110.2 | | | | | | | | | | | | | | |

Source: Exhibit 3; JX 1816, Ex. 19 (note that WACC is adjusted to be constant with the corrected WACC calculation (Exhibit 3) and tax rate is adjusted to be consistent with the Opinion, see Opinion, pp. 102-103, citing JX 1828, ¶¶9-11, 24)

10. **Pension and Post-Retirement Liabilities -** The Opinion's DCF model does not include any subtraction for pension and post-retirement liabilities in the calculation of the value of equity. Both experts included a deduction of $159 million in their calculations of the value of equity. I agree that this adjustment is appropriate.

11. **The Corrected DCF Valuation -** Correcting for the errors noted above, the corrected DCF valuation is as follows:

---

[15] JX 1816 ¶¶ 134, 138; JX 1818 ¶ 69.

| **Discounted Cash Flow Analysis** | | | | | | |
|---|---|---|---|---|---|---|
| ($ in Millions) | FY16 | FY17 | FY18 | FY19 | FY20 | Terminal FY21 |
| Revenue | $10,147 | $10,640 | $11,172 | $11,731 | $12,317 | $12,928 |
| *Growth Rate* | -- | 4.9% | 5.0% | 5.0% | 5.0% | 5.0% |
| Unlevered Cash Flow | $751 | $884 | $970 | $1,044 | $1,122 | $731.8 |
| - Cash Flow for Portion of Year Already Elapsed | 210 | 0 | 0 | 0 | 0 | - |
| **Unlevered Free Cash Flow Adjusted for Portion of Year Already Elapsed** | **$541** | **$884** | **$970** | **$1,044** | **$1,122** | **$731.8** |
| Capitalization Factor (WACC – TGR) | | | | | | 4.2% |
| Terminal Value | | | | | | $17,465 |
| *Time Period* | *0.36* | *1.21* | *2.22* | *3.22* | *4.22* | *4.22* |
| *Discounted Cash Flows* | 527 | 811 | 830 | 832 | 834 | 12,978 |

| | |
|---|---|
| Enterprise Value | $16,813 |
| Non-Convertible Debt | (5,043) |
| Value of Convertible Debt | (1,865) |
| Pension and Postretirement Liability | (159) |
| Cash | 749 |
| Amortization Tax Shield | 110 |
| **Equity Value** | **$10,605** |
| *Shares* | *219.9* |
| *Share Price* | *$48.23* |

| **Assumptions** | |
|---|---|
| WACC: | 7.29% |
| Terminal Growth: | 3.1% |
| ROIC: | 7.29% |
| FY21 Rev Growth: | 5.0% |
| FD Share Count | 219.9 |

12.     The revised DCF, correcting for the errors properly identified by Petitioners and the revised TIR required by a proper application of the McKinsey formula yields a fair value for Jarden of $48.23 per share.  "Hazardous" as it may be to rely upon the results of this valuation methodology in this context, particularly when credible market evidence of value is available,[16] I am satisfied that the revised

[16] *See Dell, Inc. v. Magnetar Global Event Driven Master Fund Ltd.*, 177 A.3d 1, 35–37 (Del. 2017) (observing that "[a]lthough widely considered the best tool for valuing companies when there is no credible market information and no market check, DCF valuations involve many inputs – all subject to disagreement by well-compensated and

DCF valuation corroborates the Court's appraisal based on the Unaffected Market Price of $48.31 per share.

Based on the foregoing, the Motion for Reargument is GRANTED in part as it relates to the Court's DCF valuation, and DENIED in part as it relates to the Court's final fair value determination.

**IT IS SO ORDERED.**

_/s/ Joseph R. Slights III_
Vice Chancellor

---

highly credentialed experts – and even slight differences in these inputs can produce large valuation gaps[,]" and then warning, "the Court of Chancery should be chary about imposing the hazards that always come when a law-trained judge is forced to make a point estimate of fair value based on widely divergent partisan expert testimony.").